## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JESSICA LEJEUNE,

      Plaintiff,                        05cv0324

   v.                                  Electronically Filed

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

### MEMORANDUM OPINION

August 8, 2005

    **I.**      **Introduction**

Plaintiff Jessic LeJeune brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under title II of the Act. Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported by substantial evidence, and therefore will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the determination by the Commissioner.

## II.     Procedural History

Plaintiff applied for DIB and SSI on March 25, 2003, alleging disability since October 11, 2002 due to diplopia (double vision), eye pain and depression.  R. 16.  The application was denied initially by the state agency, and on June 9, 2004, a hearing was held before ALJ David J. Kozma, at which plaintiff, who was represented by counsel, testified, as did a vocational expert.

On August 10, 2004, the ALJ found that plaintiff has an impairment or a combination of impairments considered severe based on 20 C.F.R. § 404.1520(b), but these impairments were not so severe as to qualify as a Listed Impairment in 20 C.F.R. Appendix 1, Subpt. P, Regulation No. 4. R. 24. The ALJ also found that although plaintiff could not perform her previous work, she remains capable of performing a wide range of jobs at all exertional levels in the national economy, especially those which would allow her to use a patch or darkened lens over one eye, and that she therefore was not disabled, based on the testimony of the VE and reference to the Medical-Vocational Guidelines. R. 25

Specifically, the ALJ made the following findings:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant has an impairment or a combination of impairments considered "sever" based on the requirements in the Regulations 20 CFR § § 404.1520(b) and 416.920(b).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.      I find that the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.      I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § § 404.1527 and 416.927).

7.      The claimant has the following residual functional capacity: jobs at all exertional levels which would allow her to wear a patch or a darkened lens over one eye.

8.      The claimant is unable to perform any of her past relevant work. (20 CFR § § 404.1565 and 416.965).  .

9.      The claimant is a "younger individual" (20 CFR § § 404.1563 and 416.963).

10.     The claimant has a "high school (or high school equivalent) education" (20 CFR § § 404.1564 and 416.964)

11.     The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § § 404.1568 and 416.968).

12.     The claimant has the residual functional capacity to perform a significant range of work at all exertional levels.  (20 CFR § 404.1567 and 416.967).

13.     Although the claimant's exertional limitations do not allow her to perform the full range of work at all exertional levels, using Medical-Vocational Rule 204.00 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as a laundry worker (about 25,000 jobs in the national economy), a hand packer (about 205,000 jobs in the national economy) and an information clerk (about 56,000 jobs in the national economy).

14.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.1520(f) and 920(f)).

R.20-21.

3

Plaintiff filed a request for review, and on January 12, 2005, the appeals council denied her request for review thereby deeming the ALJ's decision the final decision of the Commissioner. Thereafter, plaintiff timely commenced this action, which now is before this Court on the cross motions for summary judgment, under Rule 56 of the Federal Rules of Civil Procedure.

### III.    Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S.

---

[1]

Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2]

Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of

5

the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

6

be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1);

42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether

the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United

States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is
> currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a
> claimant is found to be engaged in substantial activity, the disability claim will be
> denied. . . . In *step two*, the Commissioner must determine whether the claimant
> is suffering from a severe impairment. 20 C.F.R. § 404.1520©). If the claimant
> fails to show that her impairments are "severe", she is ineligible for disability
> benefits.

> In *step three*, the Commissioner compares the medical evidence of the
> claimant's impairment to a list of impairments presumed severe enough to preclude
> any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a
> listed impairment or its equivalent, the analysis proceeds to steps four and five.
> *Step four* requires the ALJ to consider whether the claimant retains the residual
> functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d).
> The claimant bears the burden of demonstrating an inability to return to her past
> relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation
> moves to the final *step* [*five*]. At this stage, the burden of production shifts to the
> Commissioner, who must demonstrate the claimant is capable of performing other
> available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The
> ALJ must show there are other jobs existing in significant numbers in the national
> economy which the claimant can perform, consistent with her medical
> impairments, age, education, past work experience, and residual functional
> capacity. The ALJ *must analyze the cumulative effect of all the claimant's
> impairments* in determining whether she is capable of performing work and is not
> disabled. The ALJ will often seek the assistance of a vocational expert at this fifth
> step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R.

Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed

disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful

work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423

(d)(2)(A).  In order to prove disability under this second method, claimant first must demonstrate the

existence of a medically determinable disability that precludes him or her from returning to his or

her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown

that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step

5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience,

he or she is able to perform substantial gainful activity in jobs available in the national economy.

*Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*,

790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of

severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must

consider all of the claimant's impairments in combination to determine whether, collectively, they

meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider

the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885

8

F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195.  Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,*  247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound

determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c) (2002); 20 C.F.R. § 416.929.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.  The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

## IV.   Discussion

Plaintiff alleges that the ALJ made an improper assessment of the medical evidence by formulating an improper hypothetical question. Plaintiff also claims that the ALJ did not properly consider the evidence submitted by plaintiff on September 28, 2004. Before addressing plaintiff's arguments, the following is a summary of applicable law.

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

11

based on a continuing observation of the patient's condition over a prolonged period of time.'
*Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ."
*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must
weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for
no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional
citations omitted). The ALJ must consider all medical findings that support a treating physician's
assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis
of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay
opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

     Moreover, the Commissioner/ ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
> must provide some explanation for a rejection of probative evidence which would
> suggest a contrary disposition. . . . The [Commissioner] may properly accept some
> parts of the medical evidence and reject other parts, but she must *consider* all the
> evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43
(although ALJ may weigh conflicting medical and other evidence, he must give some indication of
the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to
mention significant contradictory evidence or findings, Court was left to wonder whether he
considered and rejected them, or failed to consider them at all, giving Court "little choice but to
remand for a comprehensive analysis of the evidence consistent with the requirements of the
applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a
residual functional capacity determination, the ALJ must consider all evidence before him. . . .
Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) and 20 C.F.R. §416.927(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) and 20 C.F.R. §416.927(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

 The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. § § 404.1527(b), (d) and 416.927(b), (d) (2002).[3]  Medical opinions

on matters reserved for the Commissioner are not entitled to "any special significance," although

they always must be considered. 20 C.F.R. § § 404.1527 (e)(1-2) and 416.927 (e)(1-2) (2002). The

Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and

XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy

Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the

Commissioner," explain in some detail the distinction between medical opinions entitled to

controlling weight and those reserved to the Commissioner.

     SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to

---

[3]

     Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d) (2002) and § 416.927(d). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § § 404.1527(d)(2) and 416.927(d)(2) (2002) (emphasis added).

controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2); 20 C.F.R. § 416.927 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6);

---

[4]

SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

15

20 C.F.R. § 416.927 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(i); 20 C.F.R. § 416.927 (f)(2)(i). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

<u>Application</u>

Plaintiff alleges that the ALJ made an improper assessment of the medical evidence because the hypothetical question posed to the vocational expert (VE) was improper.  In support, plaintiff states that the ALJ assumed that plaintiff could work with a patch on one eye, when there was no medical evidence to show that the patching of her eye was an effective treatment, and that the ALJ improperly used that information in his hypothetical to the VE.

A hypothetical question need reflect only those limitations that are supported by the record.

*Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  Moreover, hypothetical questions need only include the factors that are supported by objective medical evidence contained in the record. *See Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).

We find that the ALJ's hypothetical question to the VE that plaintiff's RFC includes the use of an eye patch was supported by the medical evidence.  The hypothetical posed by the ALJ included the accommodation that plaintiff could use one eye, and there was medical evidence (in the form of office notes of Dr. Hoover) which stated that Dr. Hoover recommended that plaintiff patch her eye. (Tr. at 140, 149).  Although plaintiff claims that such treatment was discontinued because it was not effective, she has pointed to no record evidence to support her assertion.  Because one of her treating physicians recommended that plaintiff patch her eye as a viable treatment option, the ALJ  was justified in using this treatment option to expand her RFC.  Accordingly, there is substantial evidence to support the ALJ's assessment that "[plaintiff] retains the ability to perform a wide range of jobs at all exertional levels in the national economy, especially those which would allow her to use a patch or a darkened lens over one eye."  R. at 19.

Plaintiff also argues that the ALJ did not address plaintiff's depression in his hypothetical to the VE.  With regard to plaintiff's depression, the ALJ noted that it "does not have any appreciable impact on her ability to handle her activities of daily living, relate effectively with others, concentrate and persist at job tasks, or adapt to stressful circumstances." R. at 19.  According to the ALJ, that assessment was consistent with that offered by the state agency medical consultants.  R. at 225.  Therefore, because there was no objective medical evidence to support including mental limitations in the hypothetical, the ALJ did not err in failing to do so.

Finally, plaintiff argues that the Secretary erred in failing to consider the new evidence

submitted by letter of September 28, 2004 (The ALJ's decision was issued on August 10, 2004).

That assertion is belied by the record, however, as the January 12, 2005 Order of the Appeals

Council specifically noted that said September 28, 2004 letter was considered as an exhibit thereto.

R. at 8.

V.      Conclusion

The Court has reviewed the ALJ's findings of fact and decision, and determines that the

findings are supported by substantial evidence.  Accordingly, the Court will deny plaintiff's motion

for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the

decision of the ALJ/ Commissioner.

An appropriate order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:

James J. Gillespie, Jr., Esquire
1040 Fifth Avenue, 1st Floor
Pittsburgh, PA 15219

Rebecca Ross Haywood, Esquire
United States Attorney's Office
700 Grant Street
Suite 400
Pittsburgh, PA 15219